IN THE SUPERIOR COURT OF GUAM

FILED
SUPERIOR COURT

| | | |
|---|---|---|
| ROSARIO S. BAUTISTA AND MANUEL C. SHOLING, | ) ) ) | CIVIL CASE NO. CV0471-07 |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | DECISION AND ORDER Defendant Perez's Motion for Summary Judgment |
| FRANCISCO TORRES, Individually and as the Previous Special Administrator and Now Executor of the Estate of Jesus U. Torres, Deceased, and PETER F. PEREZ, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

THIS MATTER came before the Court on Defendant Perez's Motion for Summary Judgment, filed May 10, 2010. The Court held a hearing on the motion on June 11, 2010.[1] Attorney David A. Mair appeared for the defendant, Peter F. Perez ("Defendant Perez"). Attorney Wayson W.S. Wong appeared for the plaintiffs, Rosario S. Bautista and Manuel C. Sholing (collectively, "Plaintiffs").

**FACTUAL BACKGROUND**

In 1967, Mrs. Ana Sholing and her three children,[2] Manuel Sholing ("Plaintiff Sholing"), Rosario Bautista ("Plaintiff Bautista") and Gloria Sholing, owned property in Tumon, Guam ("PIC property") on which the Pacific Islands Club Guam ("PIC") is situated.[3] According to the Contract of Retainer dated September 22, 1967, the Sholing family retained Attorney Jesus U.

---

[1] Also present were Attorney Daniel Berman for Intervenors Daniel U. Torres and Barbara M. Denello and Attorney Joyce Tang for Third Party Defendant Gloria Sholing.
[2] All three children will be collectively referred to as the "Sholing family."
[3] Third Amended Complaint ¶ 7 at 2, filed July 10, 2009 ("Compl.").

1

Torres ("Attorney Torres") to handle legal matters regarding the PIC property for a monthly fee of $200.[4]

Mrs. Ana Sholing[5] later executed an amended retainer agreement dated October 15, 1987 ("Amended Agreement") with Attorney Torres for the purpose of (1) negotiating the amended PIC lease and (2) providing future legal services.[6] Under the Amended Agreement, Attorney Torres was to receive ten percent (10%) of all PIC rents as attorney fees for twenty-five (25) years, beginning October 1, 1987, and ending September 30, 2012.[7]

Also in 1987, Attorney Torres performed legal work to assist Mrs. Sholing in negotiating the amended lease for the PIC property, which provided substantially increased rent payments to the Sholing family.[8] In addition to negotiating the amended lease, Attorney Torres also collected rent for the PIC property and disbursed payments to the Sholing family.[9]

When remitting rental disbursements, Attorney Torres sent periodic rent statements to the Sholing family (including each of the plaintiffs) as early as the 1980s, informing them of the total rent amount collected as well as the amounts deducted for taxes and attorney's fees.[10] The

---

[4] *Id.* ¶ 9 at 2.
[5] Ana Sholing became the attorney-in-fact for her three children to handle their collective interest in the PIC property. *Id.* ¶ 8 at 2.
[6] *See Id.* ¶¶ 11-12 at 2-3; *see also* Compl., Exhibit B to Exhibit 1 (October 15, 1987 Property Management and Retainer Agreement ("Amended Agreement")).
[7] Compl. ¶¶ 11-12 at 2-3; *see* Amended Agreement.
[8] Compl. ¶ 10 at 2.
[9] *Id.* ¶ 12 at 3.
[10] Defendant's Motion for Summary Judgment, filed May 10, 2010 ("Motion"), Manual Sholing Deposition Transcript ("Sholing Depo."), p. 103, ll. 11-19 (March 10, 2010); Motion, Rosario S. Bautista Deposition Transcript ("Bautista Depo."), p. 67, ll. 14-25 (March 11, 2010); Motion, Deposition Exhibit File for Sholing Depo. and Bautista Depo. ("Depo. Ex. File"), Exs. W, X, Y, Z, A-1, B-1, C-1, and D-1 (Statements of Rent from Attorney Jesus U. Torres).

2

rent statements specifically show that Attorney Torres deducted ten percent (10%) of the PIC property rent for the payment of attorney's fees.[11]

Plaintiffs knew about Attorney Torres' ten percent attorney fee deductions.[12] Plaintiff Sholing knew of the ten percent deductions as early as the 1980s,[13] and he admitted to thinking that the deductions were "unreasonable" and "too much" when he "first learned" about them.[14] He also thought that Attorney Torres "wasn't doing it right," and that his mother, Ana Sholing, was being "taken advantage of" by Attorney Torres.[15] Like Plaintiff Sholing, Plaintiff Bautista also thought that the ten percent deductions were "too much" and felt that way since the 1990s when she received the rent statements from Attorney Torres.[16]

After the death of Attorney Torres on August 27, 2002,[17] Defendant Perez began collecting rent payments for the PIC property.[18] Defendant Perez continued to notify Plaintiffs about the ten percent deductions by sending rent statements showing that ten percent was still being deducted from the rental disbursements for attorney's fees.[19] The rent statements sent by Defendant Perez were similar to those previously sent by Attorney Torres to Plaintiffs.[20]

---

[11] Motion, Sholing Depo., p. 103, ll. 11-19 (March 10, 2010); *see also* Motion, Bautista Depo., p. 67, ll. 14-25, p. 68, ll. 1-2 (March 11, 2010); Motion, Depo. Ex. File, Exs. W, X, Y, Z, A-1, B-1, C-1, and D-1 (Statements of Rent from Attorney Jesus U. Torres).

[12] Motion, Sholing Depo., p. 140, ll. 5-10; *see also* Motion, Bautista Depo., p. 68, ll. 7-13.

[13] Motion, Sholing Depo., p. 140, ll. 5-10 (admitting that "[d]uring the '80s and '90s" he was aware of "the 10 percent deduction by J.U. Torres.").

[14] Motion, Sholing Depo., p. 95, ll. 21-25; p. 96, ll. 1-5; p. 105, ll. 4-11; p. 136, ll. 5-12; p.139, ll. 19-24; p. 191, ll. 22-25; p. 192, ll. 1-9.

[15] Motion, Sholing Depo., p. 192, ll. 21-23; p. 98, ll. 7-14.

[16] Motion, Bautista Depo., p. 68, ll. 7-13 (admitting that she "knew all during the 1990s that Attorney Torres was deducting 10 percent."); p. 69, ll. 16-21 (March 11, 2010).

[17] Compl. ¶ 13, at 3.

[18] Motion, Bautista Depo., p. 77, ll. 17-25; p. 78, ll. 1-22 (March 11, 2010); *See, e.g.*, Motion, Depo. Ex. File, E-1 (Statement of Rent from Defendant Perez).

[19] Motion, Depo. Ex. File, E-1 (Statement of Rent from Defendant Perez).

[20] *Compare* Motion, Depo. Ex. File, Exs. W, X, Y, Z, A-1, B-1, C-1, and D-1 (Statements of Rent from Attorney Jesus U. Torres) *with* Motion, Depo. Ex. File, Ex. E-1 (Statement of Rent from Defendant Perez).

3

Despite believing that their mother, Ana Sholing, was being taken advantage of, Plaintiffs still waited until after their mother passed away in September, 2005,[21] before they started raising concerns about the ten percent deductions.[22] Plaintiffs admitted that out of respect for their mother, they never questioned the legal fees paid under the Amended Agreement prior to her death even when they believed that the deductions "too much."[23] Plaintiff Sholing stated that before his mother passed away, he never contacted an attorney and did not seek advice about the ten percent deductions which he thought were too much money.[24] Plaintiffs also admitted that they never contacted Defendant Perez about the deductions before their mother passed away.[25]

Plaintiffs had access to independent legal counsel as early as the 1990s, but failed to take any action on the ten percent deductions. For instance, Plaintiff Bautista had access to the Carlsmith law firm since as early as 1991 and some of the legal advice provided was related to the PIC property.[26] In fact, in 1996, Plaintiff Bautista had the Carlsmith firm prepare a Deed of Gift pertaining to her interests in the PIC property.[27] Plaintiff Bautista even recalled visiting the Carlsmith firm in 2005.[28] Like Plaintiff Bautista, Plaintiff Sholing had the Carlsmith firm prepare his estate plan in 2002[29] and also had the firm prepare a deed of gift for him with respect

---

[21] Complaint ¶ 47, at 7.

[22] Motion, Sholing Depo., p. 192, ll. 21-25; p. 193, ll. 1-5 (March 10, 2010); Motion, Bautista Depo., p. 69, ll. 16-21, p. 70, ll. 1-25; p. 71, ll. 1-17; p. 80, ll. 1-25; p. 81, ll. 1-4 (March 11, 2010).

[23] Motion, Sholing Depo., p. 96, ll. 13-25; p. 97, ll. 1-25; p. 98; ll. 1-10 (March 10, 2010); Motion, Bautista Depo., p. 68, ll. 20-25; p. 69, ll. 1-21, p. 70, ll. 1-25; p. 71, ll. 1-17; p. 80, ll. 1-25; p. 81, ll. 1-4 (March 11, 2010).

[24] Motion, Sholing Depo., p. 105, ll. 4-11, 15-22; p. 106, ll. 3-9, 16-20 (March 10, 2010).

[25] Motion, Sholing Depo., p. 237, ll. 12-20 (March 10, 2010); Motion, Bautista Depo., p. 82, ll. 3-25; p. 83, ll. 7-12, 22-25; p. 84, ll. 1-13 (March 11, 2010).

[26] Motion, Bautista Depo., p. 25, ll. 7-24; p. 30, ll. 3-7; p. 31, ll. 2-11 (March 11, 2010).

[27] Motion, Bautista Depo., p. 28, ll. 18-23; p. 29, ll. 14-24 (March 11, 2010).

[28] Motion, Bautista Depo., p. 123, ll. 9-13 (March 12, 2010).

[29] Motion, Sholing Depo., p. 50, ll. 4-9; p. 226, ll. 3-5 (March 10, 2010).

4

to his interests in the PIC property.[30] Plaintiffs admitted in their deposition testimony that they could have hired an attorney in the 1990s to represent them with regard to the ten percent deductions issue they had with Attorney Torres.[31]

Plaintiffs eventually contacted their current counsel, Wayson W.S. Wong ("Attorney Wong") to assist them with the deductions issue.[32] On August 30, 2006, Attorney Wong wrote Defendant Perez a letter advising him that Plaintiffs should each be receiving $221,833.33 from the upcoming PIC rental check.[33] The amount takes into consideration the ten percent deduction for attorney's fees.[34] Attorney Wong did not object to the ten percent deductions in his letter.[35]

On November 15, 2006, Attorney Wong, on behalf of Plaintiffs, sent another letter to Defendant Perez objecting to any further deductions under the Amended Agreement.[36] Plaintiffs subsequently filed claims against the Torres Estate and Defendant Perez, contending that the ten percent deductions were unreasonable, among other claims.[37]

## PROCEDURAL BACKGROUND

### The Pleadings

Plaintiffs filed their original complaint against the defendants on April 23, 2007, for breach of fiduciary duty, rescission and restitution, deceptive trade practices, and negligence.

---

[30] Motion, Depo. Ex. File, Ex. T (Deed of Gift).

[31] Motion, Sholing Depo., p. 193, ll. 6-11 (March 10, 2010); Motion, Bautista Depo., p. 71, ll. 4-10 (March 11, 2010).

[32] Motion, Bautista Depo., p. 21, ll. 4-13 (March 12, 2010).

[33] Motion, Bautista Depo., p. 33, ll. 12-17 (March 12, 2010); Motion, Depo. Ex. File., Ex. N-1 (August 30, 2006 Letter from Attorney Wayson Wong to Defendant Perez).

[34] Id.

[35] Id.

[36] Compl. ¶ 49 at 7.

[37] See generally id.

Their causes of action arose out of allegations of improprieties in the handling of Plaintiffs' business and financial affairs by Attorney Torres and, following his death, Defendant Perez.

On May 7, 2007, Plaintiffs filed their First Amended Complaint. Defendant Perez, joined by Defendant Torres, moved for the dismissal of the First Amended Complaint. On February 27, 2009, the Court granted the defendants' joint Motion to Dismiss. Specifically, the Court: (a) dismissed counts 1, 2, 3, and 4, with leave to amend; (b) reserved ruling as to counts 5 and 6; and (c) denied dismissal as to counts 7, 8, 9, and 10. *See* Dec. & Order, Feb. 27, 2009. Plaintiffs filed their Second Amended Complaint on March 13, 2009. The Seconded Amended Complaint, however, contained amendments authorized by the February 27, 2009 order, as well as unauthorized amendments.

On March 30, 2009, Defendant Perez, joined by Defendant Torres, moved for dismissal of the Second Amended Complaint, as well as to strike the unauthorized amendments. On April 2, 2009, Plaintiffs moved for leave to file a third amended complaint, which the Court granted on July 9, 2009. Plaintiffs then filed their Third Amended Complaint on July 10, 2009.

### *The Motion for Summary Judgment*

After conducting discovery (which included the deposition of Plaintiffs and Defendant Perez), Defendant Perez filed his Motion for Summary Judgment on May 10, 2010, with respect to the claims raised in Plaintiffs' Third Amended Complaint. Defendant Perez argues that all claims arising from the Amended Agreement are time-barred and should be dismissed because Plaintiffs were aware of the alleged wrongful acts since as early as the 1980s. Defendant Perez argues in the alternative that Plaintiffs' claims should be barred by laches because Plaintiffs intentionally waited to object to the Amended Agreement until after key witnesses to the Amended Agreement died. Further, Defendant Perez maintains that the attorney's fee payment

6

he received in the Ana Sholing probate was authorized by statute and cannot be collaterally attacked.

On May 28, 2010, Plaintiffs filed their Opposition to the Motion for Summary Judgment,[38] arguing that their claims are not time-barred because the limitations period for their claims must be tolled: (a) under the continuing representation rule, (b) because of fraudulent concealment on the part of defendants, (c) under the continuing wrong doctrine, (d) under equitable estoppel principles, and (e) under the continuous accrual doctrine.

Defendant Perez filed his Reply on June 4, 2010, emphasizing, among other things, that the continuing representation rule, the continuing wrong doctrine, fraudulent concealment, and the continuous accrual doctrine, do not apply.

## LAW REGARDING SUMMARY JUDGMENT

Summary judgment is appropriate if "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Bank of Guam v. Flores*, 2004 Guam 25 ¶ 8 (quoting *Manvil Corp. v. E.C. Gozum & Co.*, 1998 Guam 20 ¶ 6). "There is a genuine issue of material fact, if there is 'sufficient evidence' which establishes a factual dispute requiring resolution by a fact-finder." *Guam Pacific Enterprise, Inc. v. Guam Poresia Corp.*, 2007 Guam 22 ¶ 8 (quoting *Iizuka Corp. v. Kawasho Int'l (Guam), Inc.*, 1997 Guam 10 ¶ 7). The dispute must involve a material fact,

---

[38] Although Plaintiffs' Memorandum in Opposition to the Motion for Summary Judgment greatly exceeds the page limitations provided under CVR 7.1(g) without first requesting leave of court, the Court still considered all of the arguments raised in Plaintiffs' Memorandum (including all arguments raised in the amended version of the memorandum that was filed on June 1, 2010, which also exceeded the page limitations). The Court also considered Plaintiffs' original and amended versions of their Evidence in Opposition to the Motion for Summary Judgment that was filed with the Court.

"which is a fact that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." *Id.* (quoting *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)).

When ruling on a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences that can be drawn from those facts. *See Flores*, 2004 Guam 25 ¶ 28. The Court must also resolve any factual inconsistencies in favor of the non-moving party. *See id.* ¶ 27.

As the non-moving party, Plaintiffs must "set forth specific facts showing that there is a genuine issue for trial." Guam R. Civ. P. 56(e). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Plaintiffs may not rely on unsupported or conclusory allegations of his pleading, but must present some "significant probative evidence tending to support the complaint." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1990) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968).

## ANALYSIS

Since all of Plaintiffs' claims against Defendant Perez arise out of the Amended Agreement that was executed by Attorney Torres, the Court must first address whether Plaintiffs' claims against the Torres Estate are time-barred.

8

## I.    Plaintiffs' Claims Against Torres Estate Are Time-barred (Counts 1, 2 and 3)

Counts 1 through 3 of the Third Amended Complaint apply solely to the Torres Estate. Plaintiffs allege that Attorney Torres, during his lifetime, breached his fiduciary duty (Count 1) and engaged in deceptive trade practices (Count 3) and that either act should justify the rescission of the Amended Agreement (Count 2). Count 2 further alleges in the alternative that, if the Amended Agreement is not rescinded, then Attorney Torres has breached the covenant of good faith and fair dealing by collecting unreasonable fees under the Amended Agreement.

The central issue here involves the determination of when the statute of limitations commenced for each of Plaintiffs' claims. Count 1 and Count 3 are each subject to a 3-year statute of limitations period. *See* 7 GCA § 11305(d) (3-year statute of limitation for breach of fiduciary duty claim); *see also* 5 GCA § 32121 (3-year statute of limitation for deceptive trade practices claim). The breach of contract claim in Count 2 is subject to a 4-year statute of limitations period. *See* 7 GCA § 11303(a); *see also Park v. Citibank*, Civ. No. 05-00006, 2008 WL 926660, at *8 (Dist. Guam Jan. 1, 2008) (citing 7 GCA § 11303(a)) ("the statute of limitations for a contract action for breach of the covenant of good faith and fair dealing is four years.").

According to the Supreme Court in *Gayle v. Hemlani*, the statute of limitation commences when "the plaintiff suspects or should suspect that his injury was caused by wrongdoing or that someone has done something wrong to him." 2000 Guam 25 ¶ 24 (citing *Custodio v. Boonprakong et al.*, 1999 Guam 5 ¶ 27). The Supreme Court further observed that:

> A plaintiff need not be aware of the specific acts necessary to establish the claim .... [o]nce the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, he must decide whether to file suit or sit on his rights ... Consequently, if a suspicion exists, the plaintiff cannot sit back and wait for the facts

9

to find him as the burden of finding the facts falls upon his shoulders.

*Id.*

In this case, the statute of limitations for each of Plaintiffs' claims against Attorney Torres began to run as early as the 1980s. First, Plaintiffs had actual knowledge as early as the 1980s that Attorney Torres was deducting ten percent for attorney's fees. They received periodic rent statements as early as the 1980s showing the ten percent deductions. Second, as early as the 1980s, Plaintiffs suspected that Attorney Torres's ten percent deductions for attorney's fee were excessive and believed that their mother was being taken advantage of by Attorney Torres. Plaintiffs, however, waited until 2007, well after the statute of limitations period had passed for each of their claims, to commence this civil action. Therefore, the statute of limitations for Plaintiffs' claims against the Torres Estate expired long ago.

Plaintiffs maintain that because a fiduciary relationship existed, the continuing representation rule tolls the statute of limitations period. Even if a fiduciary relationship existed between them and Attorney Torres, Plaintiffs were still required to exercise reasonable diligence in discovering wrongful acts. The Supreme Court made it clear in *Gayle* that, "[t]he existence of a fiduciary relationship between the parties is a fact to consider in determining whether a plaintiff has exercised reasonable diligence in the inquiry of the existence and cause of his injury." *See* 2000 Guam 25 ¶ 25 (citing *Bourland v. Salas*, DCA Civ. No. 82–0224A, 1986 WL 68919 (D. Guam Ap. Div., Oct. 24, 1986)). "[A]lthough the relationship does relax the requirement of diligent inquiry, discovery does not mean actual knowledge." *Id.* "Discovery occurs when a plaintiff could have discovered the wrongful acts with reasonable diligence." *Id.* "Reasonable diligence is tested by an objective standard, and when the uncontroverted evidence irrefutably demonstrates that the plaintiff discovered or should have discovered the fraudulent

10

conduct, the issue may be resolved by summary judgment." *Id.* As stated above, Plaintiffs were suspicious of Attorney Torres' alleged wrongdoings as early as the 1980s. They could have done something about it then, especially given that they had access to independent counsel, but they chose not to out of respect for their mother. As a result of their voluntary inaction, their claims (Counts 1, 2 and 3) against the Torres Estate are time-barred.

Plaintiffs further assert that the statute of limitations periods are tolled under the continuing wrong doctrine. The Supreme Court, however, has held that the doctrine does not apply to cases where the "injury is definite and discoverable, and nothing prevents him from coming forward to seek redress." *Gayle*, 2000 Guam 25 ¶ 33 (citing *Tiberi v. Cigna*, 89 F.3d 1423, 1430-31 (10th Cir.1996)). Here, the alleged harm that Plaintiffs claim to have suffered was definite and discoverable. There is no evidence showing that in the 1980s or 1990s Attorney Torres concealed that he was collecting ten percent in attorney's fees from the rent payments. In fact, Plaintiffs received periodic rent statements as early as the 1980s and the statements clearly show the ten percent deductions. Additionally, nothing prevented Plaintiffs from seeking redress. They had access to independent counsel, and they even admitted at their depositions that they could have hired an attorney in the 1990s to represent them with regard to the ten percent attorney's fees issue. They, however, willfully chose not to do so until after it was already too late. As such, the continuing wrong doctrine does not apply.

Plaintiffs are also not entitled to equitable tolling because there is nothing in the record to excuse their failure to investigate potential claims back in the 1980s and 1990s. *See, e.g., Brown v. Neuberger, Guinn, Gielen, Rubin & Gibber, P.A.*, 495 F. App'x 350, 355-57 (4th Cir. 2012) (plaintiffs' failure to exercise diligence when they had ample reason to suspect fraud bars their equitable tolling theories). In this case, Plaintiffs, by their admissions, suspected as early as the

11

1980s that their mother was being "taken advantage of" by Attorney Torres and that Attorney Torres "wasn't doing it right." Regardless of their suspicions, Plaintiffs decided not to conduct any further inquiry or investigation until after their mother passed away in 2005. As such, they are not entitled to equitable tolling.

Therefore, for the reasons set forth above, Plaintiffs' claims against the Torres Estate (Counts 1, 2 and 3) are time-barred.

## II. Plaintiffs' Claims Against Defendant Perez Arising Out of the Amended Agreement Are Time-barred or, in the Alternative, Barred by Laches (Counts 5, 6, 7, 10, 11 and 12)

Since all of Plaintiffs' claims against Defendant Perez (Counts 5, 6, 7, 10, 11 and 12) arise from and are connected to the Amended Agreement that was executed by Attorney Torres, their claims against Defendant Perez are time-barred for the same reasons they are time-barred against the Torres Estate. Their causes of action rest primarily with the Torres Estate and should have been brought against Attorney Torres in the 1980s or 1990s, as stated above.

Plaintiffs specifically claim that Defendant Perez is liable for misrepresentation, breach of fiduciary duty and deceptive trade practices because he advised them that they had to continue paying the attorney's fees to the Torres Estate under the Amended Agreement and because he failed to advise them of (1) the unreasonableness of the attorney's fees deductions and (2) the deadline for them to file creditor claims in the probate case for the Torres Estate, among other representations.

Although Plaintiffs' claims against Defendant Perez are, in essence, malpractice claims, the claims still fail because the underlying claims against the Torres Estate (i.e. Counts 1, 2 and 3) were time-barred before Defendant Perez became involved in 2002. *See, e.g., Lenches-Marrero v. Law Firm of Averna & Gardner*, 326 N.J.Super. 382, 387, 741 A.2d 605, 608 (App.

12

Div. 1999) (citing *R.J. Longo Const. Co. v. Schragger*, 218 N.J.Super. 206, 208, 527 A.2d 480 (App. Div. 1987) (stating if no attorney-client relationship or fiduciary duty existed between attorney and client prior to expiration of statute of limitations on underlying claim, there would be no duty would be owed by attorney to plaintiff with respect to the late filing of the plaintiff's underlying claim). Even assuming a fiduciary relationship (or an attorney-client relationship) existed between Defendant Perez and Plaintiffs, the alleged relationship would not have been created until after Attorney Torres passed away in 2002, when Defendant Perez first became involved. At that point, Plaintiffs' claims regarding the Amended Agreement were already time-barred, having lapsed in the 1980s or 1990s. As such, Plaintiffs would not be able to recover from Defendant Perez because their underlying claims were time-barred before Defendant Perez entered the picture.

Even if Plaintiffs' claims are not time-barred, the claims are still barred by laches. "Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that 'equity aids the vigilant, not those who sleep on their rights.'" *Duenas v. Guam Election Comm'n*, 2008 Guam 1 ¶ 16 (quoting *Magic Kitchen, LLC v. Good Things Int'l Ltd.*, 63 Cal.Rptr.3d 713, 723 (Ct. App. 2007)). For laches to apply, there must be: "'(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice against the party asserting the defense.'" *Id.* ¶ 17 (citing *Guam Election Comm'n v. Responsible Choices for All Adults Coalition*, 2007 Guam 20 ¶ 77). "In other words, laches protects against 'inexcusable delay which prejudices the [opposing party]'s ability to respond.'" *Id.* (quoting *May v. People*, 2005 Guam 17 ¶ 27).

In determining whether lack of diligence exists, the Court must "consider both the length of the delay between the potential and actual actions and the circumstances surrounding the

13

delay." *Zahnen v. Limtiaco*, 2008 Guam 5 ¶24 (quoting *In re Beaty*, 306 F.3d 914, 927 (9th Cir. 2002)). "The proof of lack of diligence must be made using 'particularized evidence' that the delay is unreasonable, and '[m]ere delay alone will not establish laches.'" *Id.*

Plaintiffs' delay in bringing the suit was unreasonable because Plaintiffs were well aware that the attorney's fee deductions were being made as early as the 1980s. Plaintiffs also admitted that, when they first found out about the ten percent deductions, they thought that it was "too much". Attorney Torres was making the ten percent deductions during the 1980s, 1990s, including early part of 2000s before he passed away on August 27, 2002. After Attorney Torres' death, Defendant Perez began accepting the ten percent deductions. Plaintiffs received rent statements periodically since the 1980s from Attorney Torres and then in the 2000s from Defendant Perez. Each of the rent statements showed that ten percent was being deducted for attorney's fees. Plaintiffs, however, never objected to Attorney Torres or Defendant Perez about the deductions until after their mother, Ana Sholing, passed away on September 6, 2005. In fact, Plaintiffs' attorney, Attorney Wong, wrote Defendant Perez in 2006 advising him to make the ten percent deduction and did not object to the ten percent deduction. Additionally, Plaintiffs' delay is all the more unreasonable because they had access to independent counsel since the 1980s and admitted that they could have done something about the ten percent deductions, but chose not to do so out of respect for their mother. Therefore, Plaintiffs' delay was unreasonable.

The Court must now determine whether Defendant Perez was prejudiced by the undue delay. Prejudice "'must be affirmatively demonstrated by the defendant in order to sustain his burdens of proof and the production of evidence on the issue.'" *Zahnen*, 2008 Guam 5 ¶ 28 (quoting *Bono v. Clark*, 128 Cal. Rptr. 2d 31, 38 (Ct. App. 2002)). Under the laches defense, prejudice to the adverse party bards a claim due to evidentiary prejudice. *See Land Grantors in*

14

*Henderson, Union, Webster Counties, KY v. U.S.*, 86 Fed. Cl. 35, 49 (Fed. Cir. 2009). "Evidentiary or defense prejudice occurs when there is an impairment of the defendant's ability to present a full and fair defense on the merits due to the loss of records, **death of witness**, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts." *Id.* (emphasis added). As the Ninth Circuit Court of Appeals has stated, "[t]raditionally, laches is invoked when witnesses have died or evidence has gone stale." *See Trustees for Alaska Laborers-Const. Inds. Health and Sec. Fund v. Ferrel*, 812 F.2d 512, 518 (9th Cir. 1987).

Here, Defendant Perez is prejudiced because key witnesses have died: Ana Sholing and Attorney Torres. Plaintiffs intentionally waited until after they passed away before filing their lawsuit against him. Ana Sholing and Attorney Torres were the only individuals who participated in negotiating and signing of the Amended Agreement. As such, they are the only ones who had actual knowledge of what was discussed and disclosed regarding the Amended Agreement. Based upon those facts, Defendant Perez would not have the opportunity to prepare a full and fair defense against Plaintiffs' claims regarding the Amended Agreement.

Therefore, summary judgment is granted in favor of Defendant Perez and Plaintiffs' claims (Counts 5, 6, 7, 10, 11, and 12) are dismissed. *Stromberger v. Law Offices of Windle Turley, P.C.*, 2007 WL 2994643, at *5 (Tex. Ct. App. Oct. 16, 2007) (applying laches in legal malpractice claim).

### III. Plaintiffs' Claim against Defendant Perez Regarding the Sholing Probate Fails (Count 8)[39]

Count 8 of Plaintiffs' Third Amended Complaint is nothing more than a collateral attack on the final decree[40] that was issued by the Probate Court in the Ana Sholing probate case. Plaintiffs are ultimately attacking the Probate Court's award of attorney's fee to Defendant Perez, claiming that the award was unreasonable.[41] This Court is prohibited from disturbing the probate court's decree because the probate court has exclusive jurisdiction for the compensation of attorneys out of the estate. *Estate of Morrison*, 156 P.2d 473, 475 (D. Ct. Appeal, 2d Dist, Div. 1 March 2, 1945) ("it is settled law in California that the estate of the deceased is in the custody and control of the Probate Court, and it is within its exclusive province to determine the validity and amount of all claims made against the estate."); *Zahnen v. Limtiaco*, 2008 Guam 5 ¶ 17 (citing *People v. Angoco*, 2007 Guam 1 ¶ 52 n. 4) ("Because the Guam Legislature enacted a probate code substantially similar to the California Probate Code in 1953, we look to California case law for interpretation.").

Plaintiffs maintain that they were not given the opportunity to litigate the attorney's fee issue because Defendant Perez did not notify them that the final decree had been entered. However, Plaintiffs, as heirs of the Sholing Estate, had notice of the probate proceedings. Additionally, Plaintiffs, as evidenced in a letter sent by their attorney on November 15, 2006, to Defendant Perez, were aware the probate court had granted the attorney's fee award to

---

[39] This Court takes judicial notice of the entire proceedings and documents referenced in Defendant Perez's Request for Judicial Notice, filed on May 10, 2010. *See In re N.A.*, 2001 Guam 7 ¶ 58 (stating that it is proper to take judicial notice of court files).

[40] Decree Settling Final Account of Executrix and Final Distribution, Case No. PR0125-05, filed April 13, 2006.

[41] Plaintiffs' First Amended Memorandum in Opposition to Defendant Peter F. Perez's Motion for Summary Judgment and Plaintiff Intervenor's Motion for Summary Judgment, at 34-36, filed May 28, 2010.

16

Defendant Perez. Since the Decree was docketed on October 23, 2006 (23 days after the Decree was entered on the docket), Plaintiffs still had time to take the necessary steps to contest the award, but failed to do so.

Therefore, summary judgment is granted in favor of Defendant Perez and Count 8 is dismissed.

## IV. Plaintiffs' Negligence Claim against Defendant Perez is Dismissed (Count 9)

Plaintiffs have withdrawn Count 9 of the Third Amended Complaint.[42] Thus, it is dismissed on the merits.

## CONCLUSION

The Court holds that summary judgment is granted in favor of Defendant Perez and that judgment be entered in his favor.

April 17, 2013.

HONORABLE KATHERINE A. MARAMAN
Judge, Superior Court of Guam

SERVICE VIA COURT BOX
I acknowledge that a copy of the Original hereto was placed in the court box of:
D. Mair /W. Wong, Esq.
Peter F. Perez, Esq.
Date 4/18/13 Time: 5/2
Deputy Clerk, Superior Court of Guam

SERVICE VIA COURT BOX
I acknowledge that a copy of the Original hereto was placed in the
D. Mair
J. Terlaje, Esq., J. Tang
M. Phillips, Esq., D. Bevik
Date 4/18/13 Time:
Deputy Clerk, Superior Court of Guam

[42] *Id.* at 36.

17